No. 21-60771

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

LaRenda J. Harrison, Ed. D.,

            Plaintiff-Appellant,

v.

Brookhaven School District, City of Brookhaven,

            Defendant-Appellee.

On Appeal from a Final Judgment of the
United States District Court for the Southern District of Mississippi
Case No. 5:20-cv-00136, Hon. Taylor B. McNeel

## REPLY BRIEF OF PLAINTIFF-APPELLANT LARENDA J. HARRISON

| | |
|---|---|
| Keith L. Gates | Brian Wolfman |
| 655 Wendover Way | Madeline Meth |
| Ridgeland, MS 39157 | GEORGETOWN LAW APPELLATE |
| |   COURTS IMMERSION CLINIC |
| | 600 New Jersey Ave., NW, Suite 312 |
| | Washington, D.C. 20001 |
| | (202) 661-6582 |
| | wolfmanb@georgetown.edu |

Counsel for Plaintiff-Appellant LaRenda J. Harrison

February 8, 2022

No. 21-60771

LaRenda J. Harrison, Ed. D.,

Plaintiff-Appellant,

v.

Brookhaven School District, City of Brookhaven,

Defendant-Appellee.

**Certificate of Interested Persons**

Undersigned counsel certifies that the following persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

Plaintiff-Appellant

  LaRenda J. Harrison, Ed. D.

Defendant-Appellee

  Brookhaven School District, City of Brookhaven

Keith L. Gates

Georgetown Law Appellate Courts Immersion Clinic

  Brian Wolfman

  Madeline Meth

Jackson Lewis, P.C.

  Susan Fahey Desmond

  Sarah Katelyn Harrell

| | |
|---|---|
| February 8, 2022 | <u>/s/ Brian Wolfman</u><br>Brian Wolfman<br><br>Counsel for Plaintiff-Appellant |

## Table of Contents

Certificate of Interested Persons ..................................................................i
Table of Authorities ................................................................................ iv
Introduction and Summary of Argument .........................................................1
Argument ........................................................................................................2
    A.  Dr. Harrison's discrimination claims are actionable under this Court's precedent. ...........................................................2
    B.  Dr. Harrison has alleged violations of Title VII and Section 1981 consistent with those statutes' ordinary meaning. ....................7
Conclusion ................................................................................................10
Certificate of Service .................................................................................
Certificate of Compliance ..........................................................................

## Table of Authorities

**Cases**                                                                     **Page(s)**

*Abbiw v. Franks Int'l, LLC*,
   2018 WL 1221085 (W.D. La. Mar. 7, 2018) ................................................. 5, 6

*Alvarado v. Tex. Rangers*,
   492 F.3d 605 (5th Cir. 2007) ..................................................................... 3, 4

*Benningfield v. City of Houston*,
   157 F.3d 369 (5th Cir. 1998) ......................................................................... 1

*Brooks v. Firestone Polymers, LLC*,
   640 F. App'x 393 (5th Cir. 2016) (per curiam) ............................................... 3

*Chambers v. District of Columbia*,
   988 F.3d 497 (D.C. Cir. 2021), *reh'g en banc granted, judgment vacated*, 2021 WL 1784792 (May 5, 2021) ........................................................ 7

*Fyfe v. City of Fort Wayne*,
   241 F.3d 597 (7th Cir. 2001) ......................................................................... 1

*Hishon v. King & Spalding*,
   467 U.S. 69 (1984) ..................................................................................... 1, 6

*McCoy v. City of Shreveport*,
   492 F.3d 551 (5th Cir. 2007) ......................................................................... 2

*Shackelford v. Deloitte & Touche, LLP*,
   190 F.3d 398 (5th Cir. 1999) ......................................................................... 3

*Threat v. City of Cleveland*,
   6 F.4th 672 (6th Cir. 2021) ........................................................................ 8, 9

**Statutes**

42 U.S.C. § 1981(b) .......................................................................... 1, 6, 7, 9

42 U.S.C. § 2000e-2(a)(1) ...........................................................................1, 6, 7, 9

**Other Authority**

EEOC Compliance Manual, § 613.1(b), 2006 WL 4672701 (2009) ....................9

## Introduction and Summary of Argument

The brief filed by appellee Brookhaven School District stands out not for what it affirmatively argues but for what it ignores or tacitly concedes. Consider this:

• The school district has silently abandoned the district court's reasoning. It nowhere cites, let alone defends, the two decisions on which the district court relied in holding that an employer may lawfully discriminate when denying its employees training opportunities and funding. *See* Opening Br. 24-26 (explaining why the district court mistakenly relied on *Fyfe v. City of Fort Wayne*, 241 F.3d 597 (7th Cir. 2001), and *Benningfield v. City of Houston*, 157 F.3d 369 (5th Cir. 1998)).

• The school district does not dispute that the training opportunity at issue here—superintendent training at the Mississippi School Boards Association's Leadership Academy—is expressly intended to advance educators in their careers by qualifying them for promotion to superintendent positions in Mississippi public schools. *See* Opening Br. 4-5, 20-23.

• The school district does not deny that an employer's grant or withholding of an employee's training opportunity constitutes a "privilege[] of employment" under the ordinary meaning of that term as used in Title VII and Section 1981. 42 U.S.C. §§ 2000e-2(a)(1), 1981(b); *see* Opening Br. 12, 24 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984)).

1

• And the school district wordlessly acknowledges, as it must, that if the district court's decision is upheld, an employer's across-the-board policy doling out training opportunities and funding on the basis of race, color, religion, sex, or national origin would have to be upheld as well. *See* Opening Br. 1.

The school district apparently believes that these stunning concessions don't matter because stare decisis demands affirmance, yet it fails to cite precedent that requires this Court to affirm. In fact, as we now show, controlling precedent demands reversal, as does the ordinary meaning of the applicable statutory text.

## Argument

### A. Dr. Harrison's discrimination claims are actionable under this Court's precedent.

**1.a.** The school district's effort to justify the district court's ruling spans just three pages. *See* Response Br. 8-11. There, the school district refers generally to this Court's view that employers' discriminatory actions are unlawful only when they "qualify as adverse employment actions" that are "'ultimate employment decisions.'" *Id.* at 9 (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 559-60 (5th Cir. 2007)). That generic understanding of Title VII, which our opening brief acknowledged (at 7), does not answer the particular question presented here: whether, and in what circumstances, an employer's discriminatory denial of training opportunities and funding is actionable. On *that* question, the school district simply abdicates, not citing

2

a single precedent of this Court—or any court—on that topic (and, as noted earlier, not even citing the cases on which the district court relied).

It's not surprising that the school district fails to engage with the relevant precedent because this Court's Title VII decisions regarding training opportunities support reversal. *See* Opening Br. 20 (discussing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406-07 (5th Cir. 1999), and *Brooks v. Firestone Polymers, LLC*, 640 F. App'x 393, 397 (5th Cir. 2016) (per curiam)). The Court has found non-actionable only "peripheral" discriminatory denials of training that don't "'tend to' result in a change of employment status, benefits, or responsibilities." *Shackelford*, 190 F.3d at 407; *see also* Opening Br. 20 (discussing *Brooks*, 640 F. App'x at 397). As our opening brief shows (at 20-23), the whole point of the Mississippi School Board Association's Leadership Academy superintendent training, like Dr. Harrison's career-enhancing reasons for seeking out that training, is to "result in a change of employment status, benefits, [and] responsibilities." *Shackelford*, 190 F.3d at 407. In short, the school district's brief fails to do business with the relevant precedent and its relationship to the facts pleaded by Dr. Harrison.

**b.** The school district misunderstands *Alvarado v. Texas Rangers*, 492 F.3d 605 (5th Cir. 2007), and, therefore, our reliance on it, *see* Opening Br. 21-22. The school district sees *Alvarado* as a failure-to-hire case, *see* Response Br. 9, but that view is incorrect. Because the employee in *Alvarado* was seeking a

transfer from her current employer involving no increase in pay, this Court viewed the situation not as a failure-to-hire case—the employee had *already* been hired—but as testing the limits of its lateral-transfer doctrine, under which the grant or denial of a no-pay transfer, without more, is often nonactionable. *See* Opening Br. 21-22 (discussing *Alvarado*, 492 F.3d at 614-15).

The particular transfer sought by the employee in *Alvarado* was viewed as a kind of plus factor by this Court under its lateral-transfer precedent, rendering the employee's claim actionable, because the transfer involved greater potential prestige over and above an ordinary lateral transfer. *See Alvarado*, 492 F.3d at 615. So too here: The Leadership Academy training—with its competitive admissions process and its express purpose in preparing a select group of educators for positions with increased pay and considerable prestige—creates a plus factor under this Court's failure-to-train precedent. *See* Opening Br. 21-23, 24-25 (discussing this Court's failure-to-train caselaw, the purpose and attributes of Leadership Academy training, and their relevance to Dr. Harrison's allegations).

**2.a.** The school district says that its conduct was lawful because Dr. Harrison could have avoided monetary (though not other) harm by not attending the Leadership Academy at all after the school district reneged on its promise to pay for the Academy. *See* Response Br. 10. With all respect, this argument makes no sense because it assumes away the very thing at

4

issue: Dr. Harrison's allegations of *discrimination* (which must be taken as true at the motion-to-dismiss stage). *See* ROA.8 (RE.22), ROA.12 (RE.26). If, as Dr. Harrison alleges, the school district regularly paid for male and white employees to attend the Academy but did not pay for Dr. Harrison to attend because she is female and Black, then the school district has violated Title VII even though it doesn't have to pay for anyone's training in the absence of discrimination. *See* Opening Br. 12-13, 24.

The fallacy of the school district's position is revealed by its implications. The school district's argument would authorize the following policy: "We allow all employees to attend educational conferences for one week per year, but we subsidize the necessary travel and tuition for our male employees only. If our female employees wish to avoid monetary harm, they need not attend conferences that require travel and demand tuition." It should go without saying that a policy of that sort cannot be lawful, but say it we must, because that policy flows necessarily from the school district's position in this litigation.[1]

**b.** The school district dresses up this argument by relying on *Abbiw v. Franks International, LLC*, 2018 WL 1221085 (W.D. La. Mar. 7, 2018), which states that the "denial of a monetary perk, such as a bonus or reimbursement

---

[1] Because the school district's failure to pay for Dr. Harrison's training on a discriminatory basis caused Dr. Harrison monetary harm, it is actionable under this Court's Title VII employee-compensation precedent, *see* Opening Br. 26-27, to which the school district has offered no response.

5

of certain expenses, does not constitute an adverse employment action [under Title VII] if it is wholly within the employer's discretion to grant or deny and is not a component of the employee's salary," *id.* at *6 (quoted in Response Br. 10). We acknowledge that if *Abbiw* were correct, it would lend support to the school district's position.

But *Abbiw*'s understanding of Title VII is wrong, and we urge this Court to repudiate it. Under *Abbiw*, an employer would be free to give end-of-year bonuses only to employees of one religion but not other religions, or (to use the allegations in *Abbiw*) to pay a per-diem to employees of one race but not others. It cannot be that Title VII gives employers a free pass whenever they dispense (or withhold) benefits that are "wholly within the employer's discretion to grant or deny." *Abbiw*, 2018 WL 1221085, at *6. An "employer's discretion to grant or deny" an employment benefit is exactly what a "privilege of employment" is, *see* Opening Br. 12-13 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984)), and it is exactly what Title VII says cannot be handed out (or withheld) on a discriminatory basis, *see* 42 U.S.C. § 2000e-2(a)(1); *accord id.* § 1981(b). Put differently, *Abbiw* (and the school district) have failed to heed the Supreme Court, which has read Title VII and held that an employment benefit "may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all." *Hishon*, 467 U.S. at 75.

## B. Dr. Harrison has alleged violations of Title VII and Section 1981 consistent with those statutes' ordinary meaning.

**1.** As noted, the school district has not attempted to square the decision below with the statutes' words. How could it? Whether or not an employer pays for an employee's training is obviously a "term[], condition[], or privilege[] of employment." 42 U.S.C. § 2000e-2(a)(1); *accord id.* § 1981(b).

Instead of confronting the statutory text, the school district relies on the "rule of orderliness"—that a panel of this Court is bound by the Court's earlier decisions. *See* Response Br. 6. Dr. Harrison does not (of course) quarrel with the rule of orderliness. And she agrees with the United States that this Court's "ultimate employment decision" rule cannot be reconciled with the statutory text and Supreme Court precedent and should, at an appropriate time, be disavowed by this Court sitting en banc. U.S. Amicus Br. 8, 12; *see also Chambers v. District of Columbia*, 988 F.3d 497, 501, 506 (D.C. Cir. 2021), *reh'g en banc granted, judgment vacated*, 2021 WL 1784792 (May 5, 2021) (granting en banc review to reconsider D.C. Circuit's longstanding adverse-employment-action doctrine in the context of lateral transfers).

In the meantime, however, this Court need not repudiate its entire ultimate-employment-decision line of authority to hold that when an employer reneges on funding an employee's training because of her race or sex, it has violated Title VII and Section 1981. As already shown above (at 3-4), and in our opening brief (at 19-23), this Court has never held that conduct of the kind alleged here is not an "adverse employment action," and this

Court's precedent supports, not undermines, Dr. Harrison's position. Put differently, stare decisis favors Dr. Harrison, not the school district.

The situation here is like the one recently confronted by the Sixth Circuit in *Threat v. City of Cleveland*, 6 F.4th 672 (6th Cir. 2021) (Sutton, J.). There, the question was whether, under Title VII, discriminatory shift assignments are actionable "adverse employment actions." *See id.* at 678. Rejecting the defendants' position that discriminatory shift changes are always nonactionable, the Sixth Circuit held that "we have no such categorical rule," because none of its "cases create[d] an across-the-board directive that actionable discrimination claims never cover shift changes." *Id.* at 679.

That conclusion left the court free to honor the statute's text and to observe that requirements like "adverse employment action" and "materiality" are judicial "innovations" that must be viewed as "shorthand for the operative words in the statute." *Threat*, 6 F.4th at 679. The Sixth Circuit thus explained: "If the words of Title VII are our compass, it is straightforward to say that a shift schedule—whether, for example, the employee works the night shift or the day shift—counts as a term of employment." *Id.* at 677; *see id.* at 677-78 (also explaining that shift changes can alter a "privilege" of employment). Thus, a discriminatory shift change that is "more disruptive than a mere inconvenience," the Sixth Circuit explained, is actionable, *id.* at 679, even while de minimis violations could escape judicial enforcement, *see id.*

8

Here, as in *Threat*, and as discussed above (at 3-5), there is no "categorical rule" authorizing an employer to discriminate whenever it hands out or withholds training benefits, *see Threat*, 6 F.4th at 679, and this Court should reject the school district's misguided argument that there is, *see* Response Br. 6-7. And so, the rule of orderliness does not prevent this Court from recognizing the plain truth: If "the words of Title VII are our compass, it is straightforward to say that" granting or withholding funding for an employee's training "counts as" a "term[], condition[], or privilege[] of employment." *Threat*, 6 F.4th at 677; 42 U.S.C. §§ 2000e-2(a)(1), 1981(b).

**2.** The Court need not venture beyond the ordinary meaning of Title VII and Section 1981 to reverse the decision below. But the school district's insistence that this Court blind itself to on-point EEOC guidance and to Title VII's pedigree in federal labor law rings hollow. *See* Response Br. 11-12. To be sure, these authorities are not "controlling precedent," *id.* at 11, and we never said otherwise, *see* Opening Brief 13-14.

But the school district does not dispute that EEOC guidance "is entitled to judicial respect," *see* Response Br. 11, and there's no reason for this Court to ignore the EEOC's longstanding position, based on its understanding of the statutory phrase "terms, conditions, and privileges," that discriminatory grants of "educational leave" violate Title VII. EEOC Compliance Manual, § 613.1(b), 2006 WL 4672701 (2009) (discussed in Opening Br. 13). Nor should this Court disregard the origins of Title VII's "terms, conditions, or

9

privileges" language in parallel provisions of the National Labor Relations Act, whose judicial and administrative interpretations reflect the breadth of that language and include discriminatory denials of training opportunities. *See* Opening Br. 14-15.[2]

* * *

To sum up: It is more than a little ironic that the school district "vehemently objects" to Dr. Harrison's allegations that it doled out financial support for employee training in a discriminatory fashion, Response Br. 11, but then is unwilling to defend against those allegations on their merits. This Court's decisions and the text of Title VII and Section 1981 demand that it must.

**Conclusion**

This Court should reverse the district court's judgment on Dr. Harrison's Title VII and Section 1981 discrimination claims and remand for further proceedings on the merits.

---

[2] The school district nowhere mentions, let alone rebuts, Dr. Harrison's showing that congressional action since Title VII's 1964 enactment underscores the district court's error. *See* Opening Br. 15-19.

Respectfully submitted,

/s/ Brian Wolfman
Brian Wolfman
Madeline Meth
GEORGETOWN LAW APPELLATE
　COURTS IMMERSION CLINIC
600 New Jersey Ave., NW, Suite 312
Washington, D.C. 20001
(202) 661-6582

Counsel for Plaintiff-Appellant LaRenda Harrison

February 8, 2022

## Certificate of Service

I certify that, on February 8, 2022, this brief was filed using the Court's CM/ECF system. All attorney participants in the case are registered CM/ECF users and will be served electronically via that system.

/s/ Brian Wolfman
Brian Wolfman
Counsel for Plaintiff-Appellant

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 2,382 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Palatino Linotype.

/s/ Brian Wolfman
Brian Wolfman
Counsel for Plaintiff-Appellant
